**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| FARM FAMILY CASUALTY | : | |
| INSURANCE COMPANY | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 3:16-cv-00157 (VAB) |
| GARY SAMPERI and | : | |
| APRIL CRETELLA | : | |
|     Defendants. | : | |

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

This declaratory judgment action arises out of an insurance policy ("the Policy" or "the insurance policy") issued by Plaintiff Farm Family Casualty Insurance Company ("Farm Family") to Gary Samperi.

Under the Policy, Farm Family agreed to defend and indemnify Mr. Samperi for any liability adjudged against him in certain suits. Farm Family's obligations under the insurance policy were subject to specific policy exclusions. On March 25, 2015, Defendant April Cretella sued Defendant Samperi in the Superior Court of Connecticut. Superior Court Complaint, Ex. B, Pl.'s Stmt., ECF No. 13-5 ("Underlying Complaint").

Farm Family seeks a "declaration that the claims made in [Ms. Cretella's] Complaint do not give rise to a duty on the part of Farm Family Casualty Insurance Company to defend or indemnify Mr. Samperi" under his insurance policy or an endorsement to the policy that provided coverage for personal injury. *See* Compl., ECF 1. On May 2, 2016, Farm Family moved for summary judgment. *See* Pl.'s Mot. Summ. J., ECF No. 13. For the reasons that follow, this motion is GRANTED.

I.      **Relevant Factual Background[1]**

On March 25. 2015, April Cretella instituted a civil action in the Superior Court of the State of Connecticut against Gary Samperi.  Pl.'s Stmt. ¶ 1 (citing Docket Sheet, Ex. A, Def.'s Stmt., ECF No. 13-4 (docket no. MMX-CV-15-6013323-S)).  In her complaint, Ms. Cretella alleged that Mr. Samperi, who was her step-father, "physically, psychologically and emotionally abused" her for a period of around nine years.  Underlying Complaint, ¶ 7.  Ms. Cretella claimed that Mr. Samperi's conduct, which included "repeated" physical and sexual abuse, as well as supplying Ms. Cretella with narcotics and alcohol in exchange for sexual favors, caused significant "emotional, developmental, physiological and psychological injuries."  *Id.* at ¶ 10.  Ms. Cretella's Underlying Complaint raised six claims: First Count (Assault and Battery), Second Count (Negligence), Third Count (False Imprisonment), Fourth Count (Recklessness), Fifth Count (Intentional Infliction of Emotional Distress), and Sixth Count (Negligent Infliction of Emotional Distress).  Pl.'s Stmt., ¶ 4.

Farm Family thus far has provided for Mr. Samperi's legal defense to the Underlying Action, subject to a reservation of its right to deny coverage under the Policy.  Def.'s Stmt., ¶ 11.  It now, however, seeks a declaratory judgment to establish that it has no duty to defend Mr. Samperi.  *See* Compl., ECF No. 1.

**A. Mr. Samperi's Insurance Policy**

From August 16, 2006 through August 16, 2009, Plaintiff Farm Family Casualty Insurance Company insured Gary Samperi using "Special Farm Package 10."  Pl.'s Stmt., ¶ 5.  Division V of that package covered "Liability."  *Id.* at ¶ 6; *see also* Policy Statement, Def.'s Stmt., Ex. C, ECF No. 13-6 (hereinafter "Policy Statement").  From 2006-2008, Section A of Division V included "Bodily Injury and Property Damage with a total limit of liability of $300,000."  *See* Policy Statement, at 3

---

[1] The relevant facts are taken from the Plaintiff's Local Rule 56(a)1 Statement and Exhibits attached to the Local Rule 56(a)1 Statement (ECF No. 13-1) and Defendants' Local Rule 56(a)2 Statement and attached Exhibits (ECF No. 16).  *See* D. Conn. L. Civ. R. 56(a).

(2006); 71 (2007), and 88 (2008).  In 2009, Section A of Division V changed to include "Bodily

Injury, Property Damage, Personal Injury, Advertising Injury," with the same total limit as the years

before.  *Id.* at 99.

Under Section A, Farm Family agreed to cover "claims made or suits brought against an

insured for damages" when the claim or suit was caused by an "occurrence" falling under Section A.

Policy Statement, 51.  The Policy defined an occurrence as "an accident, including continuous or

repeated exposure to conditions, that results in bodily injury or property damage. All bodily injury

and property damage resulting from a common cause shall be considered the result of one

occurrence."  Pl.'s Stmt., ¶ 8.  The Policy also listed exclusions applicable to Sections A and B.  *Id.*

Specifically, Division V stated that Sections A and B did not apply to bodily injury/property damage

> 20. Arising out of actual, alleged or threatened sexual harassment or molestation, corporal
> punishment, or physical or mental abuse.

*Id.*

### B.  The Personal Injury Endorsement

Between 2006 through 2008, Samperi's policy also included a separate endorsement titled

"SFP '10' Amendatory Endorsement," which provided optional liability coverage for personal injury.

Pl.'s Stmt., ¶ 9; *see also* Personal Injury Endorsement 0506 0195, Policy Statement, 58 ("Personal

Injury Endorsement").  The Endorsement was optional, but Mr. Samperi had paid for this optional

coverage.  Pl.'s Stmt., ¶ 9. "In return for the additional premium charged," Farm Family agreed to

pay all damages that the insured became obligated to pay because of "personal injury."  The

Endorsement defined "Personal Injury" as:

> 1. false arrest, detention or imprisonment, or malicious prosecution;
> 2. publication or utterance of libel or slander, of other defamatory or disparaging  material,
>    or in violation of an individual's right to privacy, except in the course of or related to
>    advertising, broadcasting or telecasting activities conducted by or on behalf of the
>    INSURED; or
> 3. wrongful entry or eviction or other invasion of the right of private occupancy. However,
>    the actual, alleged or threatened discharge, dispersal, seepage, migration, release or
>    escape of POLLUTANTS into or upon land, water or air does not constitute an invasion
>    of the right of private occupancy.

*See* Policy Statement, 3, 58, 71, 88, 96.  The Endorsement did not apply to the following:

1. to liability assumed by the INSURED under any contract or agreement;
2. to personal injury resulting from violation of a penal statute or ordinance committed by or with the knowledge or consent of any INSURED;
3. if the injurious publication or utterance described above was made prior to the effective date of this insurance;
4. to a publication or utterance described above, concerning any BUSINESS or organization or its products or services made by or at the direction of an INSURED with knowledge or its falsity; or
5. to personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of said person by the INSURED.

Pl.'s Stmt. ¶ 10.  The Endorsement also stated that "all other provisions of the policy remain unchanged."  *Id.*

In 2009, Mr. Samperi's policy changed.  The Personal Injury Endorsement that applied from 2006-2008 was replaced by a Personal Injury and Advertising Injury Liability Coverage Endorsement.  *See* Personal Injury and Advertising Injury Liability Coverage Endorsement 0574 0208, Policy Statement, 112 ("2009 Endorsement").  In the 2009 Endorsement, Farm Family indicated that "personal injury" still included "false arrest," but also added fifteen exclusions applicable to the Personal Injury coverage.  *See* Policy Statement, 112-114; Def.'s Stmt. ¶ 19.  The list of exclusions included "personal injury arising out of actual, alleged or threatened sexual harassment or molestation, corporal punishment, or physical or mental abuse."  Policy Statement, 114.  In addition, the 2009 Endorsement revised the Policy itself, so that Section A of Division V included "Bodily Injury, Property Damage, Personal Injury, Advertising Injury," with the same total limit as the years before.  *Id.* at 99.

Because Mr. Samperi's 2009-2011 policies included "Personal Injury" within Division V, Defendants' response to Farm Family's motion focuses on Mr. Samperi's 2006-2008 policies.  Def.'s Opp., 2 ("Therefore, because the exclusions argued by the Plaintiff do not apply to the Personal Injury coverage, the Plaintiff has a duty to defend and indemnify the insured for the false

imprisonment claims for the policy periods 2006 through 2008.").  Defendants argue that the 2006-2008 Endorsement would trigger Farm Family's duty to defend against Ms. Cretella's complaint.

## II.    Standard of Review

In Connecticut, the law of the state with the "most significant relationship" to the transaction and parties ought to be applied absent a choice of law provision in the insurance contract.  *Reichhold Chems., Inc. v. Hartford Accident and Indem. Co*., 252 Conn 774, 781n.4 (2000); *see also* Restatement (Second) of Conflicts of Law § 188.  "In the absence of extraordinary circumstances, the law of the state where the principal insured risk is located will apply."  *Reichhold Chems., Inc*., 252 Conn. at 782 (noting that Connecticut law specifically recognizes "a rebuttable presumption in favor of the state where the insured risk is located.").  In this case, the insured—Mr. Samperi and his property—are located in Connecticut. Compl., ¶ 2.  Ms. Cretella is a Connecticut citizen and brought her case against Mr. Samperi in Connecticut state court.  *Id.* at ¶ 3.  Finally, both parties cite to Connecticut law in their briefs.  The Court will use Connecticut law to resolve this dispute.

### A.  Declaratory Judgments

Plaintiff Farm Family seeks a declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. § 2201, under which, in "a case of actual controversy within its jurisdiction," a federal court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201; Compl., ¶ 4.  An action under the Declaratory Judgment Act "must be sufficiently real and immediate" to allow for "specific and conclusive relief," as well as be "ripe for adjudication." *Colony Ins. Co. v. Jack A. Halprin, Inc*. 2012 WL 2859085, at *6 (D. Conn. 2012) (internal quotation marks omitted).

Connecticut law has made clear that "[t]here is no question that a declaratory judgment action is a suitable vehicle to test the rights and liabilities under an insurance policy." *St. Paul Fire & Marine Ins. Co. v. Shernow*, 22 Conn. App. 377, 380 (1990). "When a determination of the duty to defend can be made and thus clarify the insurer's obligations in the underlying tort action, the DJA is

properly invoked." *Middlesex Ins. Co. v. Mara*, 699 F.Supp. 2d 439, 444 (D. Conn. 2010) (citing

*U.S. Underwriters Ins. Co. v. Kum Gang, Inc*., 443 F.Supp.2d 348, 352-53 (E.D.N.Y. 2006))

(exercising jurisdiction to render declaratory judgment because "there is a clearly defined

controversy between the parties as to whether the plaintiff insurer must defend Mara in the

underlying action.")

### B. Summary Judgment

Connecticut courts have held that summary judgment is an appropriate vehicle for

determining whether an insurer owes an insured a duty to defend on the basis of an insurance policy,

because the "[c]onstruction of a contract of insurance presents a question of law for the court."

*Mara*, 699 F.Supp 2d at 444. The "question of whether an insurer has a duty to defend its insured is

purely a question of law, which is to be determined by comparing the allegations [in the underlying]

complaint with the terms of the insurance policy." *Cmty. Action for Greater Middlesex County, Inc.*

*v. American Alliance Ins. Co*., 254 Conn. 387, 395 (2000). "[I]t is axiomatic that no insurer is bound

to provide indemnification or defense beyond the scope of the coverage described in the insurance

contract, the policy." *Shernow*, 22 Conn. App. at 380-81 (citation omitted). In an insurance coverage

case, it is consequently "the function of the court to construe the provisions of the insurance contract

and, if no material facts are at issue, the question of whether coverage exists is a question of law that

is appropriately decided on a motion for summary judgment." *Peerless Ins. Co. v. Disla*, 999 F.

Supp. 261, 263 (D. Conn. 1998).

As in any motion for summary judgment, the burden is on the moving party to establish that

there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of

law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 256 (1986); *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute regarding a material

fact exists where "a reasonable jury could return a verdict for the nonmoving party." *Aldrich v.*

*Randolph Cent. School Dist*., 963 F.2d 520, 523 (2d Cir 1992) (quoting *Anderson*, 477 U.S. at 248).

6

A moving party may satisfy this burden by demonstrating the lack of evidence to support the nonmoving party's case.  *See PepsiCo, Inc. v. Coca-Cola Co*., 315 F.3d 101, 105 (2d Cir. 2002) (per curiam).

### III.   Discussion

Farm Family seeks summary judgment, arguing that it has no duty to defend Mr. Samperi against Ms. Cretella's state court actions.  First, it argues that "no coverage exists under the Bodily Injury/Property Damage section of the policy's Liability Coverage," due to the exclusions for intentional conduct and sexual harassment.  Pl.'s Mem., ECF No. 13-1, 6.  Second, it argues that Ms. Cretella's allegations do not "trigger a duty to defend under the Personal Injury endorsement."  *Id.* Defendants argue that Ms. Cretella's false imprisonment claims fall squarely within the Personal Injury Endorsement and trigger Farm Family's duty to defend.  Def.'s Opp. Mot., 11.  They also claim that the limitations in the "Bodily Injury/Property Damage" section do not apply to the Personal Injury endorsement.  *Id*.  For these reasons, Defendants argue, summary judgment is inappropriate.  The Court agrees with Farm Family.

Under Connecticut law, Ms. Cretella's allegations do not trigger Farm Family's duty to defend Mr. Samperi against false imprisonment claims.  Even assuming that the exclusions in Division V do not apply to the Personal Injury endorsement, as Defendants argue, Farm Family would not have a duty to defend against Ms. Cretella's false imprisonment claim because it arises out of her allegations of sexual harassment rather than a separate act of false imprisonment.

#### A.  Farm Family's Duty to Defend against False Imprisonment Claims

Farm Family argues that Ms. Cretella's complaint does not give rise to a duty to defend under the Personal Injury endorsement because the false imprisonment claim in the Complaint is "inextricably intertwined with excluded conduct"— the alleged sexual abuse.  Pl.'s Mem., 11.

Defendants argue that Farm Family has a duty to defend Mr. Samperi against the claim for false imprisonment under the Personal Injury Endorsement and suggest that Farm Family asks for "a

result contrary to the plain language of the policy."  Def.'s Opp. Mem., 13. The Court agrees with Farm Family that Ms. Cretella's false imprisonment claim is so related to her allegations of sexual harassment that the company does not have a duty to defend Mr. Samperi against them.

"[T]he allegations of the [underlying] complaint [are] determinative" of an insurer's duty to defend the insured in that action.  *Middlesex Ins. Co. v. Mara*, 699 F. Supp. 2d 439, 449 n. 12 (D. Conn. 2010).  "If an allegation of the complaint falls even possibly within the coverage, then the insurance company must defend the insured." *Moore v. Continental Cas. Co*., 252 Conn. 405, 409, 746 A.2d 1252 (2000) (internal quotation marks omitted).  To determine whether the allegations of the complaint are covered, "Connecticut courts look past the terminology in pleading" to the "facts alleged." *Mara*, 699 F. Supp. 2d at 456 (holding that insurance company that had promised to insure against "negligence" had "no duty to defend a negligence action which is actually based on intentional acts by the insured"); *Cmty. Action for Greater Middlesex*, 254 Conn. at 395 ("The question of whether an insurer has a duty to defend its insured ... is to be determined by comparing the allegations of the ... complaint [in the underlying action] with the terms of the insurance policy.") In other words, the underlying allegations are more important than the legal labels used in the complaint, which are "immaterial" to the insurer's duty to defend.  *Allstate Ins. Co. v. Jussaume*, 35 F. Supp. 3d 231, 237 (D. Conn. 2014) ("It is immaterial that [the state court plaintiff] has labeled one count against Jussaume as being based on an 'intentional act' and another count as being based on 'negligent contact;' what matters is whether the facts alleged in the Blanchard Complaint could possibly establish that Blanchard's injuries were caused by an occurrence.").

When a claim arises out of alleged acts that are excluded from coverage, that claim alone will not trigger an insurer's duty to defend.  An insurance company does not have the duty to defend against allegations that "grow out of" claims that are excluded under the policy.  *Hogle v. Hogle*, 167 Conn. 572, 356 A.2d 172, 174 (1975) ("[I]t is generally understood that for liability for an accident or an injury to be said to 'arise out of' [an occurrence], it is sufficient to show only that the accident

8

or injury 'was connected with,' 'had its origins in,' 'grew out of,' 'flowed from,' or 'was incident to' [that occurrence], in order to meet the requirement that there be a causal relationship between the accident or injury and [the occurrence]."); *Mount Vernon Fire Ins. v. Morris*, No. CV020173643S, 2004 WL 1730133, at *9 (Conn. Super. Ct. July 1, 2004), *aff'd sub nom. Mount Vernon Fire Ins. Co. v. Morris*, 90 Conn. App. 525, 877 A.2d 910 (2005) ("The relevant factor for determination is whether the claims in the underlying lawsuit are based on assault and battery, or whether the claims would exist but for the assault and battery.") (internal citations omitted).

Few courts have evaluated an insurer's duty to defend against a complaint that, like Ms. Cretella's, includes a claim for false imprisonment alongside allegations of pervasive sexual assault. In *Morris*, on which Plaintiff relies, a Connecticut Superior Court held that a count labeled "false imprisonment" did not trigger coverage under a policy that excluded action for sexual abuse, because the claims for false imprisonment claim grew out of an act of sexual abuse. *See Morris*, 2004 WL 1730133, at *19-20.[2]  The *Morris* court evaluated the plaintiff's duty to defend against a claim of sexual abuse when the relevant policy included false imprisonment claims but excluded sexual abuse claims.  It held that the false imprisonment claim was a "transparent attempt to trigger coverage," because "[a]ny sexual assault of a minor would necessarily consist of, or involve, some sort of intentional confinement." *Id.* at *20.  Furthermore, the court feared that an opposite result "would allow alleged sexual offenders … insurance protection for sexually molesting children, and thus in

---

[2] While the decision in *Morris* survived two appeals, the appellate courts did not address the conclusion that a "false imprisonment" claim would not trigger coverage.  As Defendants argue, the *Morris* Court's eventual conclusion was based on its reasoning that the alleged sexual assault arose out of the defendants' business, a prerequisite to coverage. When the Appellate Court reviewed the decision on appeal, it did not consider this argument except to summarize it in a footnote. *See Mount Vernon Fire Ins. Co. v. Morris*, 90 Conn. App. 525, 530 at n. 10 (2005) ("As noted by Judge Gormley, 'to allow coverage under such circumstances would allow alleged sexual offenders like Morris insurance protection for sexually molesting children and, thus, in effect permit him to transfer the responsibility for his deeds onto the shoulders of the innocent insuring public.'").  When the Supreme Court considered the Appellate Court's decision, it focused on a different part of the opinion as well. *See Mount Vernon Fire Ins. Co. v. Morris*, 281 Conn. 544, 548, 917 A.2d 538, 539 (2007).

effect permit [them] to transfer the responsibility for his deeds onto the shoulders of the innocent insuring public." *Id.*

Similarly, in *Collins*, the court held that "false arrest, detention or imprisonment" did not "accurately characterize[] the injuries alleged" in a state court complaint, because the alleged false imprisonment occurred when the state court plaintiff was "raped by [the defendant] while cleaning a room at [their] workplace," meaning that "the gravamen of [her complaint was] sexual harassment, not physical detention." *Collins Bldg. Servs., Inc. v. United Capitol Ins. Co.*, No. 98 CIV 3502 (AGS), 1999 WL 259519, at *5 (S.D.N.Y. Apr. 30, 1999); *see also State Farm Ins. Co. v. Bruns*, 942 A.2d 1275, 1283-84 (N. H. 2008) ("The facts as they are alleged in the initial declaration indicate that any false imprisonment or invasion of privacy was the result of the sexual assaults. Put another way, as they are alleged, the claims for invasion of privacy and false imprisonment are merely rebrandings of the claim for sexual assault. We are not persuaded that the renaming of a claim entitles it to coverage where coverage would not otherwise exist.").

Finally, in *Auto-Owners Ins. Co v. Todd*, which Plaintiff cites, the court held that a victim's false imprisonment claim did not trigger a duty to defend because false imprisonment was part of the "overall" sexual harassment allegations, rather than a separate issue.  547 N.W.2d 696, 700 (Minn. 1996).  The court held that the false imprisonment claim was "inextricably linked" to the insured's "overall intentional plan to sexually assault her and therefore coverage for damages was excluded under policy's intentional acts exclusion.  *Id.* at 699 (citing *Auto-Owners Ins. Co. v. Todd*, No. C5–95–497, 1995 WL 507635 at *3 (Minn. App., Aug. 29, 1995); *see also Allstate Ins. Co. v. S.F.*, 518 N.W.2d 37, 41 (Minn. 1994) (holding that insurance company does not have a duty to indemnify insured for a claim for negligent infliction of emotional distress for entering her home and assaulting her, because the negligence allegation was "just a variation of the intentional assault claims, which are barred by the intentional act exclusion.").

Some courts, however, have found that additional claims that are related to allegations of sexual misconduct are discrete enough to trigger personal injury coverage. In *Guideone*, the Eleventh Circuit held that a sexual misconduct exclusion in the insurance policy of a church did not bar coverage of the victim's claims of false imprisonment, kidnapping, and assault. *Guideone Elite Ins. Co. v. Old Cutler Presbyterian Church*, Inc., 420 F.3d 1317, 1329 (11th Cir. 2005). The underlying complaint included a variety of counts relating to a robbery, sexual harassment, and kidnapping that occurred in the insured church's parking. *Id.* at 1321. The incident had "commenced with a kidnapping and battery of not only the Victim, but also her children, who played no part in any of the sexual acts." *Id.* at 1328. Afterwards, the perpetrator sexually assaulted the victim. *Id.*

The *Guidone* court reasoned that the non-sexual acts were not "connected to the sexual acts such that the non-sexual acts would not have occurred "but for" the sexual misconduct." *Guidone,* 420 F.3d at 1328 ("It is completely plausible that the Victim and her children could have been assaulted, kidnapped, battered, held at knife-point, falsely imprisoned, and robbed, without the Victim having been raped, and have suffered the same or similar physical and mental injuries."). Because the additional counts did not "arise out of an act of sexual misconduct," they were not excludable under the policy's sexual misconduct exclusion. *Id.*; *see also W. Protectors Ins. Co. v. Shaffer*, 624 F. Supp. 2d 1292, 1302 (W.D. Wash. 2009) (holding that invasion of privacy claims did not clearly fall within the sexual abuse exclusion for the purposes of summary judgment on insurer's declaratory judgment action, because the plaintiff had "failed to show that it is clear that every act by Mr. Shaffer involved sexual abuse, sexual exploitation, or something similar.").

Ms. Cretella's allegations against Mr. Samperi all arise out of a traumatic and extended period of physical and sexual abuse. Ms. Cretella alleges that Mr. Samperi beat her, "repeatedly sexually abus[ed her]," and supplied her with drugs so that he could further assault her. Underlying Complaint, ¶ 8. She pleads few details specific to the false imprisonment count. *See id.* The facts

11

and injuries underlying Ms. Cretella's false imprisonment claim are the same as those alleged in her claim for assault. *Id.*

Unlike Ms. Cretella, the victim in *Guidone* alleged a separate act of false imprisonment that was unrelated to the alleged harassment. *Guidone*, 420 F.3d at 1329. The victim in *Guidone* was falsely imprisoned in her car and then sexually assaulted in a secluded area nearby. *Id.* Her young children were present during the alleged false imprisonment and the court stressed that the "non-sexual acts" that the victim pled would have caused injuries even she had not been sexually abused. *Id.* Ms. Cretella's false imprisonment claim, in contrast, relies on the same set of facts as her claim for sexual harassment. Like the false imprisonment claim in *Morris*, Ms. Cretella's false imprisonment count would not exist "but for" Mr. Samperi's alleged sexual assault and should not be covered under the Policy. *See Morris*, 2004 WL 1730133, at *10.

**B.  Farm Family's Duty to Defend under the Personal Injury Endorsement**

The parties dispute whether the Personal Injury Endorsement, in which Farm Family committed to defend Mr. Samperi against allegations of false arrest, is limited by the exclusions in the Bodily Injury/Property Damage section of the Policy's liability coverage. Defendants suggest that Farm Family is "bootstrapping" the exclusions in the Bodily/Injury Property damage coverage into the Personal Injury Endorsement and argue that the Endorsement represents "stand-alone coverage." Def.'s Opp. Mem., 2. While Defendants may be correct that the Personal Injury Endorsement represented a separate coverage agreement, it still does not trigger Farm Family's duty to defend. Even if it represented stand-alone personal injury coverage, the Endorsement would only obligate Farm Family to defend against the enumerated claims. It would not create a duty to defend against Ms. Cretella's claim for false imprisonment because this claim arises out of her allegations of sexual harassment.

While Defendants are correct that the insurance policy in *Morris*, unlike the Policy here, contained a "child molestation exclusion," *see Morris,* 2004 WL 1730133, at *10, the logic of *Morris*

applies to insurance contracts where sexual misconduct is not explicitly excluded.  Personal injury

coverage can only trigger an insurance company's duty to defend against the claims that are listed in

the contract.  The Court cannot interpret an insurance contract "to extend coverage to other torts, not

specifically enumerated, which bear [only] some similarity to those listed in the policy." *QSP, Inc. v.*

*Aetna Cas. & Sur. Co*., 256 Conn. 343, 375-76 (2001) (citing *Wake Stone Corp. v. Aetna Casualty &*

*Surety Co.*, 995 F.Supp. 612, 617 (E.D.N.C.1998)).  In *QSP*, the court concluded that the plaintiff's

personal injury coverage did not trigger a duty to defend against anti-trust allegations." *QSP*, 256

Conn. at 355.  The personal injury coverage in *QSP*, like the Personal Injury Endorsement, defined

personal injury to include injury arising out of certain enumerated offenses, including malicious

prosecution.  *Id*. at 353.

Despite the fact that the plaintiffs in the underlying action had alleged that the insured party

"threatened and instituted bad faith litigation" while engaging in an overall "anticompetitive

campaign," the *QSP* court found that the insurance company did not have a duty to defend against

the underlying complaint, because the underlying plaintiffs did not "suffer any injury that would be

causally connected to any offense covered under 'personal injury.'"  *Id*. at 362; *Springdale Donuts,*

*Inc. v. Aetna Cas. & Sur. Co. of Illinois*, 247 Conn. 801, 809-10 (1999) (concluding that allegations

that insured made "lewd and lascivious" remarks did not trigger insurance company's duty to defend

against personal injuries arising out of violations of the right to privacy); *see also Purdue Frederick*

*Co. v. Steadfast Ins. Co.*, 40 A.D.3d 285, 286 (2007) ("Unlike a general insurance policy, where

coverage is stated in broad terms and is subject to clearly defined exceptions, personal injury

coverage is designed only for defined risks, and is thus limited to claims actually arising out of the

torts enumerated in the policy.") (applying New York law).

When a claim cannot be "accurately characterize[d]" as one that is listed in an insurance

policy, the insurer has no duty to defend against that claim.  *Collins*, 1999 WL 259519, at *5.  In

*Collins*, the court concluded that the insurance company had no duty to defend the insured against

sexual harassment claims under an insurance contract that restricted its coverage to personal injury "arising from particular offenses." *Id*. The court recognized that the underlying complaint alleged "false arrest, detention or imprisonment," injuries enumerated in the contract, but concluded that "[n]one of these accurately characterizes the injuries alleged." *Id.*

Similarly, in *Commercial Union*, the court held that the insurer did not have a duty to defend the insured in a sexual harassment case, despite the fact that the plaintiff in that case had also claimed "false imprisonment," which was covered under the insured's policy. *Commercial Union Ins. Companies v. Sky, Inc.*, 810 F. Supp. 249, 255 (W.D. Ark. 1992). "Each and every allegation made by [the claimant] arises out of the alleged acts of sexual harassment," the court reasoned. *Id.* "Without the underlying sexual harassment claim there would have been no alleged 'personal injury' and no basis for a suit … for imprisonment." *Id.* at 253; *see also Swan Consultants, Inc. v. Travelers Prop. Cas. Co*., 360 F. Supp. 2d 582, 590 (S.D.N.Y. 2005) (holding that an insurer had no duty to defend because "the underlying action [did not] allege a covered 'personal injury' offense as defined by the … Policy. The [Complaint], which consisted only of professional malpractice, assault, battery, intentional infliction of emotional distress, and sexual harassment allegations, does not contain anything that fits under the "personal injury" definition, which is limited to the offenses of false arrest, detention, or imprisonment."); *Roman Mosaic and Tile Co. v. Aetna Cas. and Sur. Co*., 704 A.2d 665, 670 (Pa. Super. 1997) (concluding that the complaint, which included allegations consistent with a false imprisonment claim, did "not allege 'personal injuries' which 'arise out of' the tortious offenses enumerated in the policy of insurance. Rather, the nature of [claimant's] injuries, the nature of her allegations and the nature of her lawsuit sound in sexual harassment and gender discrimination").

Although the Court must interpret the Policy broadly, *see Moore*, 252 Conn. at 409, it cannot conclude that Farm Family has a duty to defend against allegations that are not based on one of the enumerated offenses listed under "personal injury." Although it includes a count of false

imprisonment, the "gravamen of the action [i]s for sexual assault." *Morris*, 2004 WL 1730133, at *6. Under Connecticut law, Ms. Cretella's "false arrest" claim cannot be "accurately characterize[d]" as an action for false imprisonment, *Collins*, 1999 WL 259519, at *5, and does not trigger Farm Family's duty to defend against any of the personal injuries enumerated in the Policy.  Even if the Personal Injury Endorsement were not subject to the exclusions in Division V, Farm Family would have no duty to defend Mr. Samperi against Ms. Cretella's complaint.

## IV. Conclusion

Farm Family therefore has no duty to defend against Ms. Cretella's complaint under the Personal Injury Endorsement, regardless of whether the exclusions in Division V apply to it. Plaintiff's motion for summary judgment is GRANTED.  The Clerk is directed to enter judgment for Plaintiff and close this case.

SO ORDERED at Bridgeport, Connecticut this 15th day of March 2017.

/s/ **Victor A. Bolden**
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE